In the Matter of ADA TEJADA, Appellant, v JOSEPH CHRISTIAN, as Chairman and Member of the New York City Housing Authority, et al., Respondents.

First Department, December 20, 1979

## APPEARANCES OF COUNSEL

*Irving J. Weitzman* of counsel *(MFY Legal Services, Inc.,* attorney), for appellant.

*Godfrey R. de Castro* of counsel *(Donald Schatz,* attorney), for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

In this article 78 proceeding, petitioner seeks an order annulling respondent's determination, dated September 21, 1977, which conditioned petitioner's eligibility for continued occupancy in her apartment upon permanent exclusion of her son, Alexander.

The operative facts may be briefly stated. Petitioner Tejada is a tenant in Baruch Houses, a project owned and operated by respondent, the New York City Housing Authority. Her son, Alexander, resides with her in the subject apartment. On or about May 26, 1976, the petitioner received respondent's notice that a recommendation had been made that her tenancy be terminated for nondesirability. A specification, attached to the notice, charged that:

"On or about 3/23/76, your son, Alexander Tejada, in concert with another, did unlawfully possess a gun and/or live ammunition on project grounds. * * *

"That at all times set forth in these charges Alexander Tejada was a resident of the premises which is the subject of this proceeding."

A termination hearing was eventually held on August 2, 1977. Respondent's sole witness at the hearing was Housing Authority police officer Young. The officer testified that, on March 23, 1976, he was questioning two men, named Baycott and Buffalo, concerning stolen property. During their interro-

gation, Baycott told Young that one Derek Alston had hit him with a gun the prior day. Young testified that Baycott pointed at Alston who was standing nearby. At that time, Alexander was standing next to Alston. Officer Young then approached Alston and Alexander; he asked them to accompany him and officer Jackson to a building in the Baruch development. In the lobby of that building, the officers frisked Alexander and discovered a bulge in his waistband. After a more thorough search, the officers removed a gun from Alexander's waistband. They also found four to six rounds of ammunition in Alston's pocket.

■ Neither the petitioner nor Alexander testified at the termination hearing. At the close of the hearing, petitioner's counsel moved to dismiss the proceeding on the ground that the evidence had been obtained through an illegal search and seizure. The hearing officer, citing *Matter of Finn's Liq. Shop v State Liq. Auth.* (24 NY2d 647, 657, n 2), correctly ruled that he lacked the jurisdiction to pass upon that constitutional issue. On September 2, 1977, the hearing officer rendered his "Decision and Disposition" in which he sustained the specification against the petitioner. However, he found that the petitioner was eligible to continue her tenancy subject to the permanent exclusion of her son from the household and the project premises on or before November 15, 1977. In the "Determination of Status for Continued Occupancy", dated September 21, 1977, the respondent reaffirmed that the petitioner could remain in occupancy subject to the exclusion of her son.

The petitioner brought this article 78 proceeding to annul respondent's determination on the ground that officer Young's testimony should be suppressed as the product of an illegal search. The court at Special Term denied the application because petitioner lacked standing to raise that constitutional issue.

■ On appeal, one question raised by the petitioner warrants only passing comment. The respondent does have the right, as a consequence of the nondesirable conduct of petitioner's son or any other member of her household, to evict petitioner or to impose conditions upon her continued tenancy (*Lopez v Henry Phipps Plaza South,* 498 F2d 937, 946; see, also, *Hines v New York City Housing Auth.,* 67 AD2d 1000). Two other questions raised by petitioner merit more extended discussion.

The first question is whether officer Young's testimony would have been suppressed had Alexander sought to suppress it. Prefatorily, it should be stressed that, although Alexander was arrested, the criminal case against him was never prosecuted. Hence, this suppression issue was never resolved in the criminal proceeding. It should be further emphasized that the petitioner, not Alexander, was the tenant listed for the subject apartment. Therefore, Alexander was not a formal party to the termination proceeding nor is he a party to this article 78 proceeding. The first question is thus framed in hypothetical terms since Alexander never made a motion to suppress at Special Term nor did he, individually, have a right to do so.

■■ A person, otherwise acting innocently, may not be arrested merely because he was in the company of another individual who may have engaged in criminal activity. *(People v Griffith,* 63 AD2d 138, 142; cf. *People v Ranton,* 56 AD2d 854.)* In circumstances similar to those found in this proceeding, this court has already found that police officers do not have the right to stop and frisk one individual merely because he is standing alongside a second individual who reportedly has a gun *(People v Trapier,* 47 AD2d 481). Analogously, officer Young had no reason to suspect that Alexander had committed, was committing or was about to commit any crime. Therefore, the officer's initial stop of Alexander and his subsequent search of his person were illegal. Had Alexander made an application in this or any other proceeding to suppress Young's testimony, that application would have been granted.

■ Before addressing the second question, the ramifications of the affirmative answer to the first question should be explored. If Alexander, rather than the petitioner, were the listed tenant for the apartment, the answer to the present dispute would appear to be evident. This court would necessarily be obliged to grant Alexander's petition suppressing Young's testimony at the termination hearing. The court would be required to find that the respondent should not be permitted to avail itself of the fruits of its unlawful activity in order to impose sanctions upon Alexander, whose constitutional rights were violated. The grant of suppression would also deter future misconduct on the part of the Housing Authority police officers, who are aware that an unlawful arrest of a tenant may well lead to the commencement of eviction proceedings by their employer, the respondent *(Mat-*

ter of *Finn's Liq. Shop v State Liq. Auth., supra,* at p 655). In this hypothetical situation, respondent's determination would be annulled for a total failure of proof once Young's testimony was suppressed by this court. If petitioner happened to be residing in Alexander's apartment at that time, then she would enjoy the derivative benefit of the fact that Alexander could not be evicted.

The second question is whether the petitioner has "standing" to request the suppression of officer Young's testimony. The court at Special Term answered this question in the negative because the gun was not seized from petitioner's person. This "standing" issue with regard to the exclusionary rule has been analyzed under many theories, from many aspects, and in diverse factual situations. (See, generally, 3 La Fave, Search and Seizure, § 11.3, pp 543-612.) Suffice it to say that the legal problems presented in this case are novel, if not unique. This court is called upon to harmonize legal principles and public policy considerations in the (1) criminal, (2) landlord-tenant, (3) domestic relations and (4) constitutional law areas. Therefore, the recitation of excerpts from "standing" cases in totally different factual settings will not be of any assistance in resolving this controversy.

As was mentioned above, the respondent may properly hold the petitioner responsible for her son's wrongdoing. Fairness, however, requires that petitioner be reciprocally accorded the right to take advantage of any defense available to her son. Furthermore, the efficacy of the exclusionary rule set forth in the *Finn* case can only be sustained if petitioner and Alexander are treated as a family unit for purposes of any suppression application. Otherwise, the ultimate determination of whether a family should be evicted would depend upon the fortuities of a situation rather than upon the application of sound legal principle or policy. For example, if the wrongdoer happened to be the listed tenant, then the family could not be evicted because of the wrongdoer's right to suppress the illegally seized evidence. If, on the other hand, the wrongdoer were merely a member of the household, then the family could be evicted because the listed tenant would lack "standing" to challenge that same evidence. If for no other reason than to establish uniformity of legal treatment in this sensitive landlord-tenant area, the exclusionary rule should be expanded or redefined to give petitioner "standing" in this proceeding. Petitioner's "standing" permits her to suppress

officer Young's testimony for the same reasons, set forth in the discussion of the first question, that would have enabled Alexander to do so.

Accordingly, the order of the Supreme Court, New York County (WILLIAMS, J.), entered October 19, 1978, dismissing this petition brought to annul respondent's determination, dated September 21, 1977, should be reversed, on the law, and the petition should be granted, without costs.

SILVERMAN, J. (concurring). The practical effect of the order under review is to exclude the son Alexander from residence. In those circumstances, I think he is to all intents and purposes a party to the proceedings and, therefore, the issue of whether he has been unlawfully searched in violation of his constitutional rights is properly in the case.

LUPIANO, J. (dissenting). The critical issue raised on this appeal is whether the testimony of the police officer as to the presence of a gun on petitioner's son was properly admitted into evidence at the administrative hearing. Recognition of established legal principles mandates an affirmative response under the circumstances herein.

In this case the petitioner tenant's 18-year-old son was discovered with a fully loaded .25 caliber automatic gun by a Housing Authority police officer, who had been informed during the course of an investigation of a crime involving stolen property that the son's companion, then standing with the son on project premises, was in possession of a gun with which he had struck the informant in the face. The officer requested both the tenant's son and his companion to enter a building lobby, where they were frisked by the officer, who encountered a bulge made by the gun concealed in the son's waistband. The New York City Housing Authority held a hearing wherein petitioner was charged with undesirability as a tenant based upon the allegation of gun possession relating to her son, a member of her household. After the hearing the authority determined that the tenant could continue her tenancy, subject to the permanent exclusion of her son.

Petitioner's subsequent article 78 proceeding was dismissed by Special Term on the ground that petitioner lacked standing to challenge the search of her son, which she claimed was illegal. We assume for purposes of this analysis that the search was illegal.

Special Term's holding that petitioner lacked standing to

challenge the search of her son is correct. The United States Supreme Court has held that "[i]n order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else" *(Jones v United States,* 362 US 257, 261). It should be noted that the search herein, assumed to be illegal, was not conducted on the premises rented by petitioner and occupied by her 18-year-old son as a family member. It is recognized that "(i)llegally obtained evidence is suppressed to discourage unlawful police activity, not to acquit guilty defendants" (La Fave, Search and Seizure, § 11.3, pp 604-605, citing Law and Tactics in Federal Criminal Cases 40 [G. Shadoan ed, 1964]). To paraphrase this observation—illegally obtained evidence is suppressed to discourage unlawful police activity, not to avoid truth and frustrate justice. As aptly noted in *Alderman v United States* (394 US 165, 174), "[w]e adhere to * * * the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." The determinative inquiry regarding standing is delineated in *Mancusi v De Forte* (392 US 364) and focuses on resolution of the issue whether the conduct which the party claiming to be aggrieved wishes to put in issue involves an intrusion into *that party's* reasonable expectation of privacy (see *Katz v United States,* 389 US 347; see, also, *People v Cefaro,* 21 NY2d 252, 257). Here, the conduct which petitioner wishes to put in issue occurred under circumstances which do *not involve an intrusion into petitioner's reasonable expectation of privacy.* "A * * * variety of derivative standing claim which has been rather uniformly rejected is the contention that standing exists because the defendant is in some sort of interpersonal relationship with the person who was actually the victim of the search. Thus, a defendant cannot establish standing merely by showing that the search was of his spouse or a business associate, for 'interpersonal relationships cannot make a "victim" of one who is not otherwise "one upon whom the search or seizure is directed" ' " (La Fave, Search and Seizure, at pp 605-606; cf. Model Code of Pre-Arraignment Procedure adopted by American Law Institute which contains a substantially broader definition of standing than exists in current law).

In *People v Hansen* (38 NY2d 17, 22), the New York Court of Appeals summarized standing as follows: "The Supreme Court has repeatedly stressed 'the general rule that Fourth Amendment rights are personal rights which ... may not be vicariously asserted' *(Alderman v United States,* 394 US 165, 174; see, also, *United States v Callandra,* 414 US 338, 348; *Brown v United States,* 411 US 223, 227; *Simmons v United States,* 390 US 377, 389; *Wong Sun v United States,* 371 US 471, 492; *Jones v United States,* 362 US 257; cf. *People v Estrada,* 23 NY2d 719; *People v Cefaro,* 21 NY2d 252; see, generally, Trager and Lobenfeld, The Law of Standing Under the Fourth Amendment, 41 Brooklyn L Rev 421). Thus for a defendant to establish requisite standing to raise an objection he 'must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else' *(Jones v United States, supra,* at p 261). In recognition of these principles, a defendant is considered to have standing when he is owner or possessor of the seized property, has a possessory interest in the searched premises or is legitimately on the premises when the search occurs. *(Simmons v United States, supra,* at pp 389-390.) The Supreme Court has further accorded what it has denominated 'automatic standing' to a defendant where possession of the property seized at the time of the contested search and seizure is an essential element of the offense charged. *(Jones v United States, supra.)*"

The cases relied upon by petitioner *(Barrows v Jackson,* 346 US 249; *NAACP v Alabama,* 357 US 449) as supportive of her contention that the instant matter warrants an exception to the present rule enunciating the personal nature of Fourth Amendment rights, because the entire family unit is subjected to a penalty in consequence of the act of one of its members, are inapposite. In effect, petitioner seeks greater rights in the administrative proceeding than would be available to her had she been a defendant in a criminal action and sought to object to the admissibility of evidence obtained by an illegal search or seizure directed against a third person. Further, it is irrelevant that petitioner's 18-year-old son was not a party to the administrative proceeding. He was present at the hearing and his failure to testify could be considered by the trier of the facts (see *Matter of Overton v New York City Housing Auth.,* 54 AD2d 865).

To summarize: petitioner argues that application of presently controlling principles of law relating to standing to the effect that suppression of the product of a Fourth Amendment violation can be urged only by those whose rights were violated by the search itself, and by those aggrieved solely by the introduction of the damaging evidence, should not apply because to do so under the circumstances herein would violate the sanctity of the family unit and because her son, not being a party to the proceeding, has no means of vindicating his Fourth Amendment rights except through petitioner, his mother. This argument might perhaps have a semblance of merit had petitioner's son been of more tender years, had the sanction imposed by the New York City Housing Authority been termination of her tenancy rather than continued eligibility for tenancy subject to the exclusion of her son, and had she produced her son—the family member whom she purports to represent—to testify at the hearing.

Accordingly, the judgment of the Supreme Court, New York County (WILLIAMS, J.), entered October 19, 1978, denying petitioner's application and dismissing the petition should be affirmed.

LANE and ROSS, JJ., concur with MURPHY, P. J.; SILVERMAN, J., concurs in opinion; LUPIANO, J., dissents in opinion.

Judgment, Supreme Court, New York County, entered on October 19, 1978, reversed, on the law, and vacated, without costs and without disbursements, and the petition granted.