**Farouk and Nicole YOUSSEF, Appellants,**

v.

**UNITED MANAGEMENT CO., INC. and Oliver Cowan, Jr., Appellees.**

**No. 94–CV–183.**

District of Columbia Court of Appeals.

Argued April 24, 1995.

Decided Oct. 10, 1996.

Farouk Youssef, pro se.

Ronald G. Kane, Bethesda, MD, for appellee.

Before STEADMAN,* FARRELL, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Appellees, Oliver Cowan and United Management Co., Inc., owner and manager of the Rittenhouse Apartments where appellants, Farouk and Nicole Youssef, resided, sued the Youssefs for possession of the apartment. Cowan alleged that the Youssefs had violated the building code and created an extra-hazardous condition, namely that the Youssefs did not have electricity turned on in their apartment and powered their refrigerator and other smaller appliances by means of an extension cord which a neighbor had run from the ninth floor down to the Youssefs' fourth floor apartment. The Youssefs responded that the use of the electrical cord did not create an extra-hazardous condition, and that the eviction was in retaliation for his participation in the Rittenhouse Tenants' Association and its lawsuit against Cowan and United Management. The trial court found for the landlord, and the Youssefs were evicted.

We reverse because the trial court did not apply the relevant statute, D.C.Code § 45–2552 (1996), by failing to employ the statutory presumption which puts the burden upon the landlord to show by clear and convincing evidence that the purpose of the eviction was not retaliation, and by finding by a preponderance of the evidence that there was no retaliatory motive in the eviction when it ought to have required clear and convincing evidence to make such a finding.[1] We remand the case for further proceedings applying the appropriate statutory evidentiary standard and burden of proof.

**I.**

Mr. and Mrs. Youssef rented apartment 411 at the Rittenhouse Apartments, 6101 16th Street N.W., Washington, D.C., and continuously resided at that address for twenty-two years from 1972 until their eviction by court order in the present litigation in January of 1994. In 1976, Cowan, the present owner of the Rittenhouse, bought the building. In 1987, Cowan entered into an agreement with the tenants of the Rittenhouse which involved the conversion of the building from a system by which the electricity was metered centrally, and the heating and air conditioning were provided centrally, to a system in which each apartment was metered individually and heated and cooled by a separate heatpump in each apartment. In July of 1991, Mr. Youssef, who was president of the Rittenhouse Tenants' Association, along with other tenants in the Association, sued Cowan for breaching this agreement. In August of 1991, Mr. Youssef and others also filed a tenant petition against United Management and Cowan, alleging illegal rent increases and housing code violations.

The case concerning the violation of the agreement was pending in Superior Court[2] when in July of 1993, Cowan called the District of Columbia Police and Fire Departments concerning a foul odor on the fourth floor of the apartment building in the vicinity of the Youssefs' apartment. Cowan said that he was concerned that there might have been a corpse in the apartment from the strength and the foulness of the odor, so he wanted police and fire department personnel to come investigate. The police and fire officials

---

* Chief Judge Wagner was originally on the division in this case. Following her recusal from this appeal after oral argument, Judge Steadman was drawn to replace her.

1. We note that in the trial court the Youssefs did not object to the trial court's ruling in terms of the statutory presumption and burden of proof. However, the Youssefs, who are proceeding *pro se*, cited the applicable statute in the trial court and claimed that the eviction action was in retaliation for the Youssefs' participation in a lawsuit against Cowan. On appeal, the Youssefs' brief clearly argues that if the statutory presumption and burden of proof had been properly applied

in their case, judgment would have been in their favor. Appellees do not object that the issue was not raised at trial; their brief acknowledges that the statute applies and defends the trial court's judgment as meeting the appropriate statutory standard of proof. Therefore, we consider the statutory issue to be before us.

2. The trial court ruled that the landlord had breached the agreement and Cowan appealed. The case, *Cowan v. Youssef*, No. 93–CV–1637, is now pending before another division of this court and was argued within one week of the oral argument in this case.

deemed it necessary to enter the Youssefs' apartment to find the source of the odor. Cowan did not have a key to the locks which the Youssefs had put on the door, so the fire department broke the locks to gain entry. Upon entry, Cowan and the officers determined that the apartment was not the source of the odor in question. While in the apartment, however, fire officials and Cowan observed that an electrical extension cord came into the apartment through a window from the outside and extended up the side of the building to another apartment five floors up. On August 2, 1993, Fire Department officials issued a citation to Mr. Youssef and to a Mr. Hart, in whose apartment the extension cord originated.

Based in part on the contention that the use of an extension cord to provide electricity from one apartment to a refrigerator in another apartment five floors below created an extra-hazardous condition in violation of the lease agreement, Cowan served the Youssefs with a letter to cure the hazardous condition or to quit the lease of the apartment.[3] The Youssefs did not cure the condition until some six months later, in December 1993, after a second court order compelling them to do so. Meanwhile, after the thirty days provided in the notice to cure had expired, Cowan filed suit in September 1993 for possession of the apartment. The trial court ultimately found, by a preponderance of the evidence, that the Youssefs' use of the extension cord violated the lease, and thus, the Youssefs must give up possession of the apartment to Cowan. It is from that decision that the Youssefs appeal.

## II.

■ The Youssefs claim on appeal that the trial court erred in concluding that the landlord was entitled to possession of the apartment because the Youssefs qualified for special statutory protection from retaliatory eviction as a result of their participation in litigation against Cowan. Specifically, the Youssefs point to D.C.Code § 45–2552, which provides in relevant part:

> (a) No housing provider shall take any retaliatory action against any tenant who exercises any right conferred upon the tenant by this chapter ... or by any other provision of law. Retaliatory action may include any action or proceeding not otherwise permitted by law which seeks to recover possession of a rental unit, action which would unlawfully increase rent, decrease services, increase the obligation of a tenant, or constitute undue or unavoidable inconvenience, violate the privacy of the tenant, harass, reduce the quality or quantity of service, any refusal to honor a lease or rental agreement or any provision of a lease or rental agreement, refusal to renew a lease or rental agreement, termination of a tenancy without cause, or any other form of threat or coercion.

> (b) In determining whether an action taken by a housing provider against a tenant is retaliatory action, the trier of fact shall presume retaliatory action has been taken, and shall enter judgment in the tenant's favor unless the housing provider comes forward with clear and convincing evidence to rebut this presumption....

The statute then defines six different categories of tenants whose eviction within six months of their protected activity will be presumed to have been retaliatory. Among those are tenants who have "[o]rganized, been a member of, or have been involved in any lawful activities pertaining to a tenant organization," those who have "[m]ade an effort to secure or enforce any of the tenant's

---

**3.** The Youssefs' use of the extension cord as a means of getting electricity into their apartment began with a dispute between the Youssefs and the Potomac Electric Power Company, which led to the shutting-off of their electricity, a condition which Cowan claims violated the clause in their lease agreement which specifies that the tenant will have all utilities transferred to his name and will pay the bills as they come due if they are not included in the rent. The lack of electricity also led naturally to another deemed violation of the lease agreement, namely that the tenant would have a hard-wired smoke detector in each unit. Since the tenant had no electricity, the hard-wired smoke detector was inoperable; instead, Mr. Youssef installed a battery-operated smoke detector. Because they had no electricity in their apartment, the Youssefs ran an extension cord from a neighbor's apartment to their own unit in order to run their refrigerator and other electrical items.

rights under the tenant's lease or contract with the housing provider," and those who have "[b]rought legal action against the housing provider." D.C.Code § 45–2552(b)(4)–(6). The appellants claimed that they fit into at least three of the six categories of tenants who are specifically protected against retaliatory eviction because 1) the Youssefs were members of the tenants' association of the Rittenhouse Apartments—indeed, Mr. Youssef was its president; 2) they had filed a tenant petition alleging housing code violations and illegal rent increases; and 3) they were plaintiffs in a lawsuit against the landlord to enforce the terms of the agreement between the tenants' association and the landlord. *De Szunyogh v. William C. Smith & Co.*, 604 A.2d 1, 4 (D.C.1992) ("[I]f a tenant alleges acts which fall under the retaliatory eviction statute, D.C.Code § 45–2552, the statute by definition applies, and the landlord is presumed to have taken 'an action not otherwise permitted by law' unless it can meet its burden under the statute."). The statute protects such tenants by creating a presumption that their eviction is retaliatory unless the landlord can rebut the presumption by clear and convincing evidence. We need not decide whether the acts presented by appellants brought them within any of the categories of tenants protected by the statute as appellees do not challenge that the statute applies in this case. Therefore, in this appeal we assume that the Youssefs were entitled to the statutory presumption that their eviction was retaliatory.

Applying the statute to this case, we find error in that the record[4] reveals that the trial court did not accord the Youssefs the protection of the presumption to which they were entitled under D.C.Code § 45–2552(b). The Youssefs presented sufficient evidence to bring them within the protection of the statute, and they presented evidence to prove a retaliatory motive underlying the eviction.

The landlord responded that these tenants were evicted for violating the terms of their lease agreement. While it may be that United Management and Cowan had a basis in the lease to evict the tenants, under § 45–2552, the Youssefs get the benefit of the statutory presumption that the action was retaliatory "unless the housing provider comes forward with clear and convincing evidence to rebut this presumption."[5]

The record of the trial seems to indicate that the court never recognized that once the tenant is eligible for the benefit of the statutory presumption, the landlord bears the burden of proving a non-retaliatory purpose behind the eviction. Indeed, the judge stated after closing arguments, "[y]ou've [the Youssefs] made reference to the fact that all of this is a product of harassment and retaliation, and let me say that none of that has been substantiated." The Rental Housing Act, however, does not require a tenant who meets the requisite conditions to substantiate retaliatory eviction; it is the landlord's burden to prove that the eviction was not retaliatory. Further, in granting possession to the landlord, the trial court found "that the plaintiff has, in every respect, established its case by a preponderance of the evidence." Under the statute, however, the landlord is required to overcome the presumption of retaliation by clear and convincing evidence. We reverse the judgment as contrary to law. The statute mandates that the "trier of fact *shall* presume retaliatory action has been taken, and *shall* enter judgment in the tenant's favor" unless the landlord has met his statutory burden of proof. D.C.Code § 45–2552(b) (emphasis added).

The appellant raises a number of other issues on appeal which we need not reach in light of our disposition remanding the case for further proceedings. We address the one issue raised on appeal that would affect the

---

4. Only the audio tapes, rather than the transcripts, of the trial are part of the record on appeal as a result of an informal—and, as far as we know, unprecedented—agreement between the Clerk's Office and the appellants. This procedure does not comport with D.C.App.R. 10(c)(1). However, because the error was not noted either by appellees, who failed to object or order the transcript, *see* D.C.App. R. 10(c)(5), or

by the Clerk's Office, we reluctantly accept the audio tape in lieu of the transcript. No such concession will be made in further proceedings between the parties before this court, if any.

5. We do not address the issue, not briefed by the parties, of what evidence will serve to overcome the statutory presumption.

trial court's consideration of the evidence on remand.

■ The Youssefs claim that because their Fourth Amendment rights were violated when police and fire department officials broke into their home, the electrical cord that was observed while they were unlawfully in their apartment, and the citation that resulted from its discovery, could not subsequently be used as evidence against the Youssefs in the eviction proceeding. The trial court did not err in denying the request for exclusion on Fourth Amendment grounds. Absent a showing of complicity and benefit to government officers flowing from the litigation, exclusion of evidence in a *private* civil dispute—even assuming that the evidence has been seized in violation of the Fourth Amendment—is not called for because exclusion would not have the deterrent effect of preventing future Fourth Amendment violations by government officers that is the purpose of the exclusionary rule. *See, e.g., Arizona v. Evans,* — U.S. —, — – —, 115 S.Ct. 1185, 1191–93, 131 L.Ed.2d 34 (1995) (holding that excluding evidence gained due to a clerical error would not function as a deterrent to future violations); *United States v. Janis,* 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d 1046 (1976) (refusing to extend the exclusionary rule to evidence in a federal civil proceeding involving the government based on the unconstitutional conduct of state police); *Thompson v. United States,* 444 A.2d 972, 973 (D.C.1982) ("[A]bsent egregious circumstances, the Fourth Amendment exclusionary rule is inapplicable in the context of a probation revocation hearing. . . ."). The appellants cite us to *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), which concerned an action for damages under 42 U.S.C. § 1983(a) against state police officers who carried out an eviction for the landlord. Although *Soldal* makes clear that the Fourth Amendment applies to unlawful seizures of property even where there has been no unlawful search, *id.* at 67–69, 113 S.Ct. at 547, *Soldal* does not concern exclusion of evidence wrongfully obtained. *Soldal* might be helpful if the appellants were suing the Police and Fire Departments, or defending an action brought by them, but not in defending a private eviction action brought by the landlord.

The case is remanded for further findings by the trial court applying the correct statutory evidentiary standard and burden of proof.