BERNARD J. McCULLOUGH, Plaintiff-Appellant, v. JOHN KNIGHT et al., Defendants-Appellees.

First District (3rd Division)    No. 1—96—0775

Opinion filed November 26, 1997.—Rehearing denied January 9, 1998.

LEAVITT, J., specially concurring.

R. Eugene Pincham, of Chicago, for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Julian N. Henriques, Jr., Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE CAHILL delivered the opinion of the court:

The issue presented for review in this appeal is whether evidence suppressed in a criminal case may be introduced later in an administrative hearing.

Bernard McCullough sought administrative review of a $500 fine imposed by the Chicago department of revenue for an unregistered

firearm recovered from his vehicle. The circuit court upheld the department of revenue's decision. McCullough appeals. We affirm.

Police officer John Knight arrested McCullough on May 1, 1995, searched his vehicle, and seized a handgun. Two proceedings followed. The first was a criminal prosecution of McCullough for failure to register the firearm in violation of section 8—20—040 of the Chicago Municipal Code (Chicago Municipal Code § 8—20—040 (amended July 7, 1992)). The circuit court suppressed evidence of the recovered weapon when the city admitted that Knight lacked probable cause to search McCullough's vehicle. The court discharged McCullough but ordered the weapon confiscated and destroyed.

There followed an administrative hearing before the department of revenue. McCullough's vehicle had been seized by Officers Knight and Dougherty at the time of his arrest in accordance with section 8—20—015 of the Chicago Municipal Code. Chicago Municipal Code § 8—20—015 (amended July 14, 1993). Section 8—20—015 provides:

"(a) The owner of record of any motor vehicle that contains an unregistered firearm or a firearm that is not broken down in a nonfunctioning state shall be liable to the city for an administrative penalty of $500.00 plus any towing and storage fees applicable under Section 9—92—080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section. ***

(b) Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. *** [T]he police officer shall notify any person identifying himself as the owner of the vehicle *** at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing ***.

(c) Whenever the owner of record of a vehicle seized pursuant to this section makes a [written] request *** for a vehicle impoundment hearing within 12 hours after the seizure, a hearing officer of the department of revenue shall conduct the vehicle impoundment hearing within 24 hours after the seizure ***. *** If, after the hearing, the hearing officer determines that there is probable cause to believe that the vehicle is subject to seizure and impoundment under subsection (a), the hearing officer shall order the continued impoundment of the vehicle *** unless the owner of the vehicle posts *** a cash bond in the amount of $500.00 plus any applicable towing and storage fees.

(d) Within 10 days after a vehicle is seized and impounded pursuant to this section, the city shall notify *** the owner of record of the date, time and location of a hearing that will be conducted

pursuant to this section. \*\*\* If, after the hearing, the hearing officer determines by a preponderance of evidence that the vehicle contained an unregistered firearm or a firearm not broken down in a nonfunctioning state, \*\*\* the hearing officer shall enter an order finding the owner of record of the vehicle civilly liable to the city for an administrative penalty in the amount of $500.00. \*\*\* If the hearing officer finds that no such violation occurred, the hearing officer shall order the immediate return of the owner's vehicle or cash bond." Chicago Municipal Code § 8—20—015 (amended July 14, 1993).

McCullough paid the $500 bond for the release of his vehicle. He then filed a motion to dismiss the impoundment proceedings and for return of the $500, arguing that the search of his vehicle violated the fourth and fifth amendments of the United States Constitution (U.S. Const., amends. V, XIV), and article 1, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2).

McCullough argued at the hearing that evidence of the unregistered firearm was inadmissible in the impoundment proceedings because it had been suppressed in the criminal case. The hearing officer disagreed and held that McCullough was subject to the $500 administrative penalty.

McCullough filed a complaint in circuit court for administrative review. The circuit court affirmed the hearing officer's decision.

■ We first note that McCullough filed a motion to supplement the record on appeal, under Supreme Court Rule 329 (134 Ill. 2d R. 329), with a transcript of the hearing before the department of revenue. The motion was granted. The transcript was not certified by the trial court and had not been filed in or considered by the trial court. We will not consider references to this transcript because "documents which are not a part of the trial court record and were not considered by the trial court will not be considered on appeal." *State Farm Mutual Automobile Insurance Co. v. Stuckey*, 112 Ill. App. 3d 647, 649, 445 N.E.2d 791 (1983). The failure to file the transcript in the trial court would allow us to affirm the hearing officer without further analysis. See *Jenkins v. Wu*, 102 Ill. 2d 468, 482, 468 N.E.2d 1162 (1984). The issue before us, however, is a question of law, reviewed *de novo*. The state of the record is such that we are able to address the question of law. See *Dubey v. Abam Building Corp.*, 266 Ill. App. 3d 44, 46, 639 N.E.2d 215 (1994) (incomplete record does not preclude review where issue can be decided without complete record).

■ On appeal, McCullough argues that under both the United States and Illinois Constitutions the unconstitutionally seized firearm must be suppressed. But he cites no authority, as required under Il-

linois Supreme Court Rule 341, for his claim under the Illinois Constitution. 155 Ill. 2d R. 341(e)(7); *Estate of Strocchia v. City of Chicago*, 284 Ill. App. 3d 891, 901, 672 N.E.2d 914 (1996). So we will only address his claim under the United States Constitution. We are aware that the exclusionary rule is applicable to state criminal trials. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090, 81 S. Ct. 1684, 1691 (1961).

■ McCullough contends that the city's "argument" that "the $500 penalty is not a sufficient amount to merit constitutional [protection] is *** ludicrous." But the city does not argue that McCullough is not constitutionally protected. The city correctly notes that whether the exclusionary sanction is proper in a particular case is " 'an issue separate from the question whether the [f]ourth [a]mendment rights of the party seeking to invoke the rule were violated by police conduct.' " *United States v. Leon*, 468 U.S. 897, 906, 82 L. Ed. 2d 677, 688, 104 S. Ct. 3405, 3412 (1984), quoting *Illinois v. Gates*, 462 U.S. 213, 223, 76 L. Ed. 2d 527, 538-39, 103 S. Ct. 2317, 2324 (1983). The point the city makes is that the severity of the penalty is an element to be considered in the balancing test employed to invoke or relax the exclusionary rule. McCullough labels this point "ludicrous" without addressing it. Such a strategy of appellate advocacy on an issue of some significance is more than a minor irritant for those who must read his brief.

McCullough argues that the department of revenue erred in relying on evidence obtained during an unconstitutional search. In support of his contention, McCullough cites *Boyd v. United States*, 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524 (1886). McCullough argues that the hearing officer's and circuit court's decisions were "repugnant to and violative of over two hundred years [*sic*] of *** Supreme Court precedent of *Boyd*, which has been religiously followed without deviation." Miscounting the years and misstating the precedential history of *Boyd* aside, the case is relevant to the issue before us, though far from dispositive.

*Boyd* was a forfeiture action brought by the United States against an importer of 35 cases of plate glass allegedly imported without payment of a customs duty. The penalty faced by the importer was forfeiture of the glass. Relying on an 1874 revenue statute, the trial court ordered the importer to produce company records that would aid the United States in its case against him. The Supreme Court held that the compulsory production of a person's private papers for use against him in a civil forfeiture proceeding violates both the unreasonable search proscription of the fourth amendment and the self-incrimination proscription of the fifth amendment. The Court further

held that the unconstitutionally seized records could not be used against the defendant. *Boyd*, 116 U.S. at 633-35, 638, 29 L. Ed. at 752-53, 753, 6 S. Ct. at 533-35, 536.

The city argues that *Boyd* is distinguishable. *Boyd* involved a forfeiture of property of the kind that the Supreme Court has found to be punitive. See *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 701-02, 14 L. Ed. 2d 170, 175, 85 S. Ct. 1246, 1251 (1965); *Boyd*, 116 U.S. at 634, 29 L. Ed. at 752, 6 S. Ct. at 534. McCullough simply gives us an extensive quotation from *Boyd*; he does not explain why the $500 fine and temporary impoundment here are comparable to the complete property forfeiture in *Boyd*. Even if the fine here could be characterized as punitive, *Boyd* is not the case from which to reason.

The city cites several Supreme Court cases that trace the evolution of the exclusionary rule under the fourth amendment and establish the appropriate framework for analyzing this issue. See *Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 82 L. Ed. 2d 778, 104 S. Ct. 3479 (1984); *Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405; *United States v. Janis*, 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976); *United States v. Calandra*, 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974). The city points out that, despite McCullough's claim that *Boyd* has been "religiously followed," McCullough has ignored this evolution of Supreme Court use of the exclusionary rule. We agree. McCullough cites to *Boyd* as if it were the last and only word on the subject. In fact there have been thousands of words on the subject, all of which McCullough's brief ignores. See *Janis*, 428 U.S. at 446 n.15, 49 L. Ed. 2d at 1056 n.15, 96 S. Ct. at 3028 n.15 (noting the multitude of opinions addressing the exclusionary rule).

■ Since *Boyd*, the Supreme Court has held that "[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra*, 414 U.S. at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620. Application of the exclusionary rule has been restricted to those areas where the remedial objectives of deterring unlawful police conduct are "most efficaciously served." *Calandra*, 414 U.S. at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620. With this language in mind, the Supreme Court has developed a balancing test to measure the appropriate use of the exclusionary rule. We must balance the benefits of applying the exclusionary rule against the cost "on the societal interest in law enforcement." *Janis*, 428 U.S. at 448, 49 L. Ed. 2d at 1058, 96 S. Ct. at 3029. See also *Lopez-Mendoza*, 468 U.S. at 1041, 82 L. Ed. 2d at 787, 104 S. Ct. at 3485; *Calandra*, 338 U.S. at 349, 38 L. Ed. 2d at 572, 94 S. Ct. at 620-21.

The Supreme Court has refused to extend the exclusionary rule beyond criminal prosecutions in numerous cases. See, *e.g., Lopez-Mendoza*, 468 U.S. at 1050, 82 L. Ed. 2d at 793, 104 S. Ct. at 3489 (deportation proceedings); *Stone v. Powell*, 428 U.S. 465, 493-94, 49 L. Ed. 2d 1067, 1087-88, 96 S. Ct. 3037, 3052 (1976) (federal *habeas corpus* proceedings); *Janis*, 428 U.S. at 453-54, 49 L. Ed. 2d at 1060, 96 S. Ct. at 3031-32 (federal tax assessment proceeding); *Calandra*, 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (grand jury proceedings).

Illinois courts have also refused to extend the exclusionary rule to some proceedings. See *People v. Dowery*, 62 Ill. 2d 200, 340 N.E.2d 529 (1975) (probation revocation proceedings); *Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 625 N.E.2d 945 (1993) (police department administrative discharge proceedings); *People v. Grubb*, 143 Ill. App. 3d 822, 493 N.E.2d 699 (1986) (court supervision revocation proceedings).

Plaintiff's *Boyd* analysis is the "absolutist" argument of the type clearly rejected by the Illinois Supreme Court in *People v. Dowery*, 62 Ill. 2d 200, 340 N.E.2d 529. In *Dowery*, our supreme court addressed whether evidence suppressed in proceedings on a substantive criminal offense could be used to revoke probation. In refusing to apply the exclusionary rule, our supreme court discussed the policies of the probation system and the interests of society. The court concluded that "[m]erely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation." *Dowery*, 62 Ill. 2d at 206. The court rejected the defendant's argument that failure to apply the exclusionary rule would result in police harassment of probationers, since there was no evidence of harassment in that case, and courts remain able to impose sanctions to deter harassment if demonstrated in a particular case. *Dowery*, 62 Ill. 2d at 206-07.

The echo of a "no exceptions" approach is seen in Mr. Justice Goldenhersh's dissent in *Dowery*. Goldenhersh reasoned that "[u]nless the fourth amendment *** [is] to be reduced 'to a form of words' [citation] [it] must be interpreted to mean that evidence seized in violation of [its] provisions is not only not to be used in a 'criminal prosecution' but 'that it shall not be used at all.' [Citation.]" *Dowery*, 62 Ill. 2d at 209 (Goldenhersh, J., dissenting). But the Illinois Supreme Court has rejected this approach, as has the United States Supreme Court.

In examining the costs of applying the exclusionary rule here, we find that the department of revenue would be unable to consider valuable and relevant evidence that would impede the truth-finding

function of the hearing officer, as is usually the case when the exclusionary rule is employed. See *Leon,* 468 U.S. at 907, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412; *Janis,* 428 U.S. at 447, 49 L. Ed. 2d at 1057, 96 S. Ct. at 3029. This would interfere with the public policy behind the administrative proceeding. The impoundment of the vehicle and the charging of costs to plaintiff are part of a municipal policy with which no one can quarrel: the elimination of unlawful weapons from the streets of the city. Applying the exclusionary rule would clearly hamper the city's ability to shift the costs of this endeavor to vehicle owners whose vehicles are being used to transport unlawful weapons.

The city argues that the application of the exclusionary rule to the department of revenue proceedings would add little deterrent effect beyond that already imposed: excluding the illegally obtained evidence in a criminal or quasi-criminal proceeding, such as the one brought in the circuit court here. See *Janis,* 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021. In *Janis,* the United States Supreme Court held that the constitution did not require application of the exclusionary rule in a civil tax proceeding brought by the federal government. The Court reasoned that police officers were sufficiently "punished" by exclusion of evidence in criminal prosecutions because the exclusion frustrates the criminal enforcement process, which was the duty and concern of police officers to ensure. *Janis,* 428 U.S. at 448, 49 L. Ed. 2d at 1057, 96 S. Ct. at 3029.

We find *Janis* persuasive. McCullough makes no argument that officers in this situation would not be sufficiently deterred by the threat of suppression of evidence in the criminal or quasi-criminal prosecutions. McCullough has not shown, and we do not detect, an added deterrent effect in extending the exclusionary rule to the administrative proceeding that would warrant the cost to society: diminishing the power of the city to rid the city of illegal firearms and imposing on those who possess them the cost of reasonable steps to implement the policy. The circuit court did not err in finding the exclusionary rule inapplicable to the department of revenue proceedings.

McCullough cites other cases for the proposition that the evidence should be excluded: *People v. Albea,* 2 Ill. 2d 317, 118 N.E.2d 277 (1954), *People v. Schmoll,* 383 Ill. 280, 48 N.E.2d 933 (1943), and *People v. Martin,* 382 Ill. 192, 446 N.E.2d 997 (1942). These cases are not on point. They are criminal cases that do not address whether the exclusionary rule may be invoked in an administrative proceeding. And all of them predate *People v. Dowery* by at least 20 years.

■ McCullough argues that *People v. Buonavolanto,* 238 Ill. App. 3d 665, 606 N.E.2d 509 (1992), provides "additional authority" sup-

porting a reversal. Again, McCullough's argument merely consists of an extensive block quotation. McCullough's apparent argument is that the city is collaterally estopped from bringing the administrative action to impose on McCullough the costs of implementing an illegal firearms ordinance. The doctrine of collateral estoppel provides that an issue raised and decided by a court of competent jurisdiction cannot be relitigated in a later action between the same parties. *Suttles v. Vogel*, 126 Ill. 2d 186, 195, 533 N.E.2d 901 (1988). For the doctrine of collateral estoppel to apply, the issue being litigated in the latter suit must be identical to the one decided in the former. *Talarico v. Dunlap*, 177 Ill. 2d 185, 192-93 (1997).

*Buonavolanto* held that the State was collaterally estopped from litigating an issue in a criminal prosecution that had already been decided against the State in a civil forfeiture proceeding. *Buonavolanto*, 238 Ill. App. 3d at 670-73. This case is readily distinguishable. In the prosecution of McCullough, the circuit court only decided the factual issue of whether Knight's seizure was unconstitutional, a fact conceded by the city. Because it was a criminal proceeding, the illegally seized weapon was excluded. The circuit court had no reason to address the relevant legal question here: whether an illegally seized weapon must be excluded in a proceeding designed to shift the cost of gun control to owners of vehicles used to transport unregistered weapons.

Affirmed.

COUSINS, P.J., concurs.

JUSTICE LEAVITT, specially concurring:

I concur in the decision reached by my colleagues in this case, inasmuch as the decision accurately states the current state of the law in Illinois regarding application (or nonapplication) of the exclusionary rule in settings such as this. However, I believe that the law, as it now stands, fails to recognize one of the two historical justifications of the exclusionary rule; namely, the "imperative of judicial integrity." See *Elkins v. United States*, 364 U.S. 206, 222, 4 L. Ed. 2d 1669, 1680, 80 S. Ct. 1437, 1447 (1960). I would adopt the reasoning of Justice Goldenhersh in *People v. Dowery*, 62 Ill. 2d 200, 209-10, 340 N.E.2d 529 (1975) (Goldenhersh, J., dissenting) that evidence seized in violation of the fourth amendment to the federal constitution and section 6 of article I of our state constitution should not be used against an individual in any proceeding:

"'Decency, security and liberty alike demand that government

officials shall be subjected to the same rules of conduct that are commends to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.' " *Dowery*, 62 Ill. 2d at 209-10, quoting *Olmstead v. United States*, 277 U.S. 438, 485, 48 S. Ct. 564, 575, 72 L. Ed. 944, 959-60 (1928) (Brandeis, J., dissenting).

For these reasons, I specially concur.