FIFTH DIVISION
DECEMBER 18, 2009

No. 1-08-3531

| | | |
|---|---|---|
| U.S. RESIDENTIAL MANAGEMENT | ) | Appeal from the |
| AND DEVELOPMENT, LLC, as Property | ) | Circuit Court of |
| Manager for the Chicago Housing Authority, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 07 M1 225378 |
| | ) | |
| MICHAEL HEAD, | ) | |
| | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Sheldon Garber, |
| | ) | Judge Presiding. |

JUSTICE TULLY delivered the opinion of the court:

Plaintiff U.S. Residential Management & Development, LLC, appeals from an order granting defendant Michael Head's combined motion to suppress and motion to dismiss in a forcible entry and detainer action. On appeal, plaintiff asserts that the circuit court improperly granted defendant's motion to suppress the evidence of defendant's drug-related criminal conduct and motion to dismiss on the basis that the exclusionary rule should not apply to plaintiff's possessory action. For the reasons that follow, we reverse the judgment of the circuit court and remand for further proceedings.

Background

On October 15, 2006, defendant was arrested in his rental residence at the Lathrop Homes

public housing development for possessing cannabis in violation of section 550/4(d) of the Cannabis Control Act. 720 ILCS 550/4(d) (West 2006). Plaintiff managed the premises on behalf of the Chicago Housing Authority (CHA). Defendant's lease with plaintiff required him to refrain from engaging in any drug-related criminal activity on or off CHA premises and to keep persons under his control from engaging in any criminal activity. The lease would be terminated if there was any drug-related criminal activity on or off the premises by the resident, any family member of the household, or a guest.

CHA and the Chicago police department (CPD) were parties to an intergovernmental agreement. Pursuant to the agreement, CPD provided supplemental police services for CHA properties, including: dedicated watches, increased foot patrols, customized policing strategies, and the monitoring and prevention of gang and other illegal activities. In addition, CPD provided statistics and relevant data, including reports of the activities of the assigned officers to CHA.

CPD and CHA also shared information through established procedures about public housing residents who were arrested for committing drug-related crimes. Generally, CPD provided case reports to CHA regarding arrests on CHA properties. CHA would then complete a notice of arrest and send it to the property manager, in this case plaintiff. Plaintiff could then serve the tenant with written notice of CHA's decision to terminate the lease agreement. In exchange for these services, CHA paid CPD up to $6 million per year.

On March 9, 2007, the State dropped the criminal charges against defendant. On August 14, 2007, CHA sent plaintiff notice of defendant's arrest. Ten days later, on August 24, 2007, plaintiff sent defendant notice of its decision to terminate the lease agreement. On September 7,

1-08-3531

2007, plaintiff filed its complaint against defendant for possession of the premises pursuant to section 9–118 of the Forcible Entry and Detainer Act (735 ILCS 5/9–118 (West 2006)) (the Act). On June 25, 2008, defendant filed his combined motion to suppress the evidence of his drug-related criminal conduct under the exclusionary rule and motion to dismiss.

On December 8, 2008, the circuit court held that the evidence of defendant's crime was seized by the arresting officers in violation of the fourth amendment's prohibition against unreasonable searches and seizures. Plaintiff does not dispute this finding on appeal. In support of its holding, the circuit court reasoned that the arresting officers conducted their search without a warrant, lacked probable cause to search the premises because they were relying on information provided by an informant whom they had never before seen and whose gender they could not even remember, and that even if the officers had probable cause (which they did not), no exigent circumstances justified the warrantless search.

Next, the circuit court found that the exclusionary rule barred the admission of the illegally seized evidence. The circuit court held that the proceeding was quasi-criminal because defendant was facing eviction for unlawful drug-related activity, plaintiff filed suit under section 9–118 of the Act (a statutory provision that applies only to criminal activity), and the proposed sanction was harsh. Moreover, the circuit court reasoned that even if the forcible entry and detainer action was a purely civil proceeding, the exclusionary rule may be extended to such proceedings when its application would deter the police from committing future violations of the fourth amendment. The circuit court reasoned that CPD and CHA followed an established procedure for sharing information about public housing residents who were arrested for drug-

-3-

related crimes, and that the two agencies were parties to a formal written contract that required CPD to provide CHA with supplemental policing services designed to combat the very activity for which defendant was arrested. The circuit court found that given the relationship between CPD and CHA, suppressing the illegally seized evidence in this case would deter the police from committing future fourth amendment violations. As such, the circuit court granted defendant's motion to suppress and dismissed the action with prejudice because plaintiff could not establish defendant violated his lease agreement without the illegally seized evidence. This appeal was timely filed.

On appeal, plaintiff contends that the circuit court improperly granted defendant's motion to suppress evidence, arguing that the exclusionary rule does not apply to plaintiff's forcible entry and detainer action. Plaintiff asserts that because this action is a purely civil proceeding, and not a criminal or quasi-criminal proceeding, the circuit court improperly applied the exclusionary rule. Plaintiff also asserts that the societal costs of excluding evidence of defendant's drug-related criminal conduct in this action greatly outweigh any minimal deterrent benefit upon the police.

Analysis

In reviewing an appeal from a circuit court's ruling on a motion to suppress, we apply a two-part standard of review. *People v. Salinas*, 383 Ill. App. 3d 481, 490 (2008). First, the circuit court's factual findings are reviewed for clear error and will only be reversed if they are against the manifest weight of the evidence. *Salinas*, 383 Ill. App. 3d at 490. Second, the circuit court's ultimate decision as to whether suppression is warranted is reviewed *de novo*. *Salinas*,

383 Ill. App. 3d at 490. In this case, neither party challenges any of the circuit court's factual determinations. Accordingly, the sole issue before this court is plaintiff's legal challenge to the circuit court's application of the exclusionary rule, which we review *de novo*.

The first issue on appeal is whether actions brought pursuant to the Forcible Entry and Detainer Act constitute quasi-criminal proceedings. The Act "sets forth a mechanism for the peaceful adjudication of possession rights in the trial court." *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 608 (2007). " 'The distinct purpose of the forcible entry and detainer proceeding is to determine only who should be in rightful possession.' " *Circle Management, LLC,* 378 Ill. App. 3d at 609, quoting *Miller v. Daley,* 131 Ill. App. 3d 959, 961 (1985). In other words, "[a] forcible entry and detainer action is a limited proceeding, focusing on the central issue of possession." *American National Bank v. Powell,* 293 Ill. App. 3d 1033, 1044 (1997). "The only questions that are to be answered in such a proceeding concern which party is entitled to immediate possession and whether a defense that is germane to the distinctive purpose of the action defeats plaintiff's asserted right to possession." *Subway Restaurants, Inc. v. Riggs*, 297 Ill. App. 3d 284, 287 (1998). Our supreme court recognized that a forcible entry and detainer action "is a civil proceeding to obtain restitution of premises of which the plaintiff is unjustly deprived." *West Side Trust & Savings Bank v. Lopoten*, 358 Ill. 631, 637 (1934).

Under section 9–118 of the Act, the housing authority may initiate emergency housing eviction proceedings against a tenant for possession of the premises if "there is direct evidence of *** unlawful[ly] possessing *** cannabis *** within or upon the premises by or with the knowledge and consent of, or in concert with the person or persons named in the complaint."

1-08-3531

735 ILCS 5/9–118(b)(2)(A) (West 2006). Plaintiff's complaint did not request a penalty, a forfeiture of defendant's personalty, or a fine from defendant, but instead only sought to invoke its right under the Act to regain possession of the premises. As such, because the Act's purpose is to settle disputes about possession of real property – and not to punish defendant – we hold that forcible entry and detainer actions are not quasi-criminal in nature.

In finding that plaintiff's action was quasi-criminal, the circuit court reasoned that defendant was facing eviction for unlawful drug-related activity, noting that the statute only applied to criminal activity, and that the proposed sanction was harsh. While the circuit court did not indicate its basis for finding this action to be quasi-criminal, defendant suggests that *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 14 L. Ed. 2d 170, 85 S. Ct. 1246 (1965), supports the trial court's finding. In *One 1958 Plymouth Sedan*, the Court reasoned that the forfeiture action was quasi-criminal because its object was "to penalize [the defendant] for the commission of an offense against the law"and because the threatened penalty was harsh. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700-01, 14 L. Ed. 2d 170, 175, 85 S. Ct. 1246, 1251 (1965).

The present case is distinguishable from *One 1958 Plymouth Sedan*. Here, the focus of the Act is not to punish defendant, but rather to set forth a mechanism for the peaceful adjudication of possession rights in the circuit court. In addition, while defendant may be subjected to a harsh consequence –  losing his residence – this consequence does not transform this civil proceeding into a quasi-criminal proceeding. When the Supreme Court denied extending the exclusionary rule in *Immigration and Naturalization Service v. Lopez-Mendoza,*

468 U.S. 1032, 82 L. Ed. 2d 778, 104 S. Ct. 3479 (1984), and in *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 141 L. Ed. 2d 344, 118 S. Ct. 2014 (1998), the possible sanctions were deportation and incarceration, respectively. These sanctions, while harsh, did not transform the civil proceedings into quasi-criminal proceedings. These sanctions are also equally, if not more, harsh than losing one's residence.

For the foregoing reasons, we reverse the circuit court's finding that this proceeding is quasi-criminal and find that actions brought pursuant to the Act are civil in nature.

The next issue is whether the exclusionary rule applies to suppress illegally seized evidence in a civil forcible entry and detainer action. Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 619 (1974). "[T]he rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Calandra,* 414 U.S at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620. The Supreme Court has explained that "[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra,* 414 U.S at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620. Instead, application of the exclusionary rule has been restricted to those areas where the remedial objectives of deterring unlawful police conduct are "most efficaciously served." *Calandra,* 414 U.S at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620.

Accordingly, the Supreme Court developed a balancing test to measure the appropriate

use of the exclusionary rule. *McCullough v. Knight*, 293 Ill. App. 3d 591, 596 (1997). Under this test, we must balance the likely benefits of excluding unlawfully seized evidence against the likely costs. *Lopez-Mendoza,* 468 U.S. at 1041, 82 L. Ed. 2d at 787, 104 S. Ct. at 3484. On the benefit side of the analysis is the deterrence of possible future unlawful police conduct. *Lopez-Mendoza,* 468 U.S. at 1041, 82 L. Ed. 2d at 787, 104 S. Ct. at 3484. "On the cost side there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs." *Lopez-Mendoza,* 468 U.S. at 1041, 82 L. Ed. 2d at 787, 104 S. Ct. at 3485.

Our research has not disclosed any Supreme Court or Illinois cases which have considered the application of the exclusionary rule in forcible entry and detainer actions. When the Supreme Court has applied the exclusionary rule balancing test, it has refused to extend the rule to various civil proceedings. In *Calandra,* 414 U.S 338, 38 L. Ed. 2d 561, 94 S. Ct. 613, the Court forbade a witness from invoking the exclusionary rule in a grand jury proceeding. In *United States v. Janis,* 428 U.S. 433, 49 L. Ed. 2d 1046, 96 S. Ct. 3021 (1976), the Court refused to apply the exclusionary rule to suppress evidence seized by the criminal law enforcement officers of one sovereign (state police) in a civil proceeding of another sovereign (federal tax assessment proceeding). In *Lopez-Mendoza*, 468 U.S. 1032, 82 L. Ed. 2d 778, 104 S. Ct. 3479, the Court refused to extend the exclusionary rule to civil deportation hearings. In *Pennsylvania Board of Probation*, 524 U.S. 357, 141 L. Ed. 2d 344, 118 S. Ct. 2014, the Court held that the exclusionary rule did not apply in parole revocation hearings.

Illinois courts have applied the exclusionary rule balancing test and have similarly refused

to extend the rule in various civil proceedings. For example, in *People v. Dowery,* 62 Ill. 2d 200 (1975), the court refused to extend the exclusionary rule to probation revocation proceedings. In *Grames v. Illinois State Police,* 254 Ill. App. 3d 191 (1993), the exclusionary rule did not extend to police department administrative discharge proceedings. In *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339 (2002), the court held the exclusionary rule did not apply in employee termination proceedings. In *McCullough*, 293 Ill. App. 3d 591, the court refused to suppress evidence of an illegally seized handgun at the plaintiff's vehicle impoundment proceeding before the department of revenue. The *McCullough* court examined the costs of applying the exclusionary rule to a vehicle impoundment proceeding and determined that "the department of revenue would be unable to consider valuable and relevant evidence that would impede the truth-finding function of the hearing officer," thus interfering with the public policy of the administrative proceeding: eliminating "unlawful weapons from the streets of the city." *McCullough*, 293 Ill. App. 3d at 597-98. Relying upon *Janis*, the *McCullough* court held that "police officers were sufficiently 'punished' by exclusion of evidence in criminal prosecutions because the exclusion frustrates the criminal enforcement process, which was the duty and concern of police officers to ensure." *McCullough*, 293 Ill. App. 3d at 597-98, citing *Janis*, 428 U.S. at 448, 49 L. Ed. 2d at 1057, 96 S. Ct. at 3029.

Balancing the factors in the present case, we conclude that the exclusionary rule should not be extended to encompass the present situation. The cost to CHA and the truth-finding process outweigh the benefit which would result from the application of the exclusionary rule in forcible entry and detainer actions. By applying the exclusionary rule in the present case, CHA

would be unable to consider valuable and relevant evidence of potential criminal activity that would impede the truth-finding function of the circuit court. To extend the rule and suppress evidence of criminal activity would hinder CHA's ability to enforce lease agreements designed to promote safety and deter illegal conduct in public housing communities. This rationale is consistent with the concerns of the Illinois General Assembly in implementing the Act, which was to protect persons at public housing premises from "imminent danger and peril to [their] lives, safety, health and mental and physical well being." Pub. Act 87–0933, eff. August 27, 1992 (adding 735 ILCS 5/9–118). The circuit court failed to incorporate this half of the analysis under the exclusionary rule balancing test.

While the circuit court focused on the deterrent value of suppressing the illegally seized evidence, the costs of excluding relevant and probative evidence outweigh any additional marginal deterrence provided by extending the exclusionary rule. Here, as in *McCullough*, police officers are sufficiently punished by the exclusion of evidence in criminal prosecutions. While CPD and CHA are parties to an agreement that requires CPD to provide CHA with policing services, the record does not indicate CPD is, or has been, improperly motivated to illegally seize evidence to benefit civil proceedings. Defendant suggests that if illegally seized evidence may be introduced in eviction proceedings, "nothing will discourage the police from conducting unlawful searches." We are not persuaded by this type of speculative argument. In the event that such improper behavior or police harassment is shown, "the judiciary may impose appropriate sanctions to deter misconduct." *Dowery*, 62 Ill. 2d at 207.

Defendant cites cases from other jurisdictions for the proposition that the evidence should

be excluded: *Tejada v. Christian*, 71 A.D.2d 527, 422 N.Y.S.2d 957 (1979), *Boston Housing Authority v. Guirola*, 410 Mass. 820, 575 N.E.2d 1100 (1991), *Youssef v. United Management Co.*, 683 A.2d 152 (D.C. App. 1996), *Housing Authority v. Dawkins*, 239 Conn. 793, 686 A.2d 994 (1997), and *Tirado v. Commissioner of Internal Revenue*, 689 F.2d 307 (2d Cir. 1982), *cert. denied*, 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256 (1983). Initially, we note that the findings of the courts of other jurisdictions are not binding here. *People v. Sullivan*, 366 Ill. App. 3d 770, 781 (2006). Additionally, we do not find it necessary to turn to another state for guidance on the issue. Nonetheless, we note that of the five cases cited by defendant from other jurisdictions, only one of the courts found in favor of applying the exclusionary rule, *Tejada*, 71 A.D.2d 527, 422 N.Y.S.2d 957. However, the *Tejada* court did not apply the exclusionary rule balancing test, and instead, after only a brief discussion of the deterrent effect of excluding the evidence, determined that it " would necessarily be obliged" and "required" to suppress the illegally obtained evidence. *Tejada,* 71 A.D.2d at 530, 422 N.Y.S.2d at 959-60. This type of blanket assertion contradicts the long standing philosophy that the "exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *Calandra,* 414 U.S at 348, 38 L. Ed. 2d at 571, 94 S. Ct. at 620.

Lastly, we are not persuaded that article I, section 6, of the Illinois Constitution of 1970 requires an independent analysis pertaining to the applicability of the exclusionary rule in forcible entry and detainer actions. While we are free to prescribe a broader remedy under article I, section 6, than would be required under the fourth amendment (*People v. Caballes*, 221 Ill.2d 282, 305-06 (2006)), we see no reason to do so in the present case. As explained above, Illinois

courts considering the applicability of the exclusionary rule in civil proceedings have routinely applied the balancing test set out by the Supreme Court. We see no reason to stray from this practice of balancing the likely benefits of excluding unlawfully seized evidence against the likely costs under either the federal or state constitution.

For the foregoing reasons, we reverse the circuit court's dismissal of plaintiff's forcible entry and detainer action and remand the cause for further proceedings.

Reversed and remanded.

TOOMIN, P.J., and HOWSE, J. Concur.

U.S. RESIDENTIAL MANAGEMENT &
DEVELOPMENT, LLC as Property Manager for
CHICAGO HOUSING AUTHORITY ,

Plaintiff-Appellant,

v.

MICHAEL HEAD,

Defendant-Appellee.

No. 1-08-3531

Appellate Court of Illinois
First District, Fifth Division

JUSTICE TULLY delivered the opinion of the court:

TOOMIN, P.J., and, HOWSE, J., concur.

Appeal from the Circuit Court of Cook County

HONORABLE SHELDON GARBER

Richard W. Christoff of Sanford Kahn, LTD., 180 North LaSalle Street, Suite 2025, of Chicago, Illinois, for Plaintiff-Appellant.

Lawrence D. Wood, Miriam Hallbauer, Carolyn Norton of Legal Assistance Foundation of Metropolitan Chicago, 1279 N. Milwaukee Avenue, Suite 407, of Chicago, Illinois for Defendant-Appellee.